# Commonwealth *v.* Crowl, Appellant.

*Constitutional law—Title of act—Act of March 24, 1909, P. L. 63—Police power.*

1. The title of the Act of March 24, 1909, P. L. 63, viz: "An Act for the protection of the public health, and to prevant fraud and deception in the manufacture, sale, offering for sale, exposing for sale, and having in possession with intent to sell, of adulterated or deleterious ice cream; fixing a standard of butter fat for ice cream; providing penalties for the violation thereof, and providing for the enforcement thereof;" gives sufficient notice of the contents of sec. 4 of the act which provides that: "No ice cream shall be sold within the state containing less than eight per centum of butter fat, except where fruits or nuts are used for the purpose of flavoring, when it shall not contain less than six per centum of butter fat."

2. The Act of March 24, 1909, P. L. 63, is within the police power of the commonwealth in fixing a standard of butter fat for ice cream. The fact that ice cream below the standard set by the act is not injurious to health, does not render the act unconstitutional.

3. A prosecution under the act of March 24, 1909, may be brought by any citizen. It is not necessary that it shall be commenced by the dairy and food commissioner.

*Statutes—Repeal—Food law—Ice Cream Act—Acts of May, 13, 1909, P. L. 520, and March 24, 1909, P. L. 63.*

4. The Act of May 13, 1909, P. L. 520, "relating to food, etc.," does not repeal the Ice Cream Act of March 24, 1909, P. L. 63.

*Food law—Ice Cream Act—Evidence—Act of March 24, 1909, P. L. 63.*

5. Where in a prosecution under the Ice Cream Act of March 24, 1909, P. L. 63, it is shown that a pint of ice cream for the sale of which the defendant was prosecuted had been analyzed and found deficient in butter fat, it is not error to exclude the evidence of experts to show that samples taken from other parts of the same can from which the pint was taken, might show different percentages of butter fat.

Argued Oct. 8, 1912. Appeal, No. 71, April T., 1913, by defendants, from judgment of Q. S. Erie Co., Sept. Sessions, 1911, No. 32, on verdict of guilty in case of Commonwealth *v.* A. B. Crowl and W. F. Lewis. Before RICE, P. J. HENDERSON, MORRISON, ORLADY and PORTER, JJ. Affirmed.

Indictment for violation of the Ice Cream Act of March 24, 1909, P. L. 63. Before WALLING, P. J.

At the trial it appeared that G. M. Pelton, a witness for the commonwealth, and one of the special agents of the dairy and food department, had purchased from the defendants a pint of chocolate ice cream, and that a subsequent analysis of the ice cream thus bought showed that it was below the standard in butter fat provided by the Act of March 24, 1909, P. L. 63.

When James A. Evans, the commonwealth's expert, was under cross-examination, he was asked this question: "Q. Would you say that it would be possible from the same can, taking a sample at the edge, another at the center and another at the lowest strata, to get three different samples that would vary as much as seven or eight points, if it was a five-gallon can? "

Objected to as not cross-examination.

The Court: I don't believe that is cross-examination. It may be competent in rebuttal to show that, but I do not think it is cross-examination.

Objection sustained and exception sealed for defendants. [12]

When Dr. Joseph A. Deghuee, an expert witness for the defendant, was on the stand, he was asked this question: "Q. What would you say, taking a five-gallon can, as to the variation of the top of the can with the bottom; how high would it run in percentage on fat?"

Objected to as immaterial; the evidence upon the part of the commonwealth shows the sale of this pint of ice cream; that it is not material to show what there might have been in some other part of the can or in some other part of the store.

The Court: In our opinion, the only evidence the commonwealth having offered being in regard to the half pint bought by Mr. Pelton, it is not material to show that any different parts of a larger can of ice cream would show a greater amount of butter fat than others. It is a question as to the sample or as to the amount sold by the de-

fendants or one of the defendants to the prosecutor.   The objection is sustained, evidence excluded and an exception sealed for the defendants. [13]

The court refused to instruct the jury that the act of March 24, 1909, was unconstitutional, or that the legislature had no authority under the police power to enact it, or that the prosecution should have been commenced by the dairy and food commissioner.

Verdict of guilty, upon which the defendant was sentenced to pay a fine of $25.00.   Defendant appealed.

*Errors assigned* were above instructions.

*Walter Jeffreys Carlin,* of the New York Bar, and *Gerry T. Kincaid,* for appellants.—Though the title may be used in the construction of the act the title cannot control the plain and unambiguous meaning of the language used in the body of the act so as to relieve it from the vice of unconstitutionality: Com. v. Moorhead, 7 Pa. C. C. Rep. 513; Provident Life & Trust Co. v. Hammond, 230 Pa. 407; Com. v. Samuels, 163 Pa. 283.

The police power is not unlimited, there must be a basis, an excuse, a reason for its exercise: Com. v. Vrooman, 164 Pa. 306; Toledo, Wabash & Western Ry. Co. v. Jacksonville, 67 Ill. 37; People v. Mensching, 187 N. Y. 8 (79 N. E. Repr. 884).

The act discriminates between dealers who manufacture ice cream without using fruit or nuts for flavoring and those who do use nuts for flavoring, thereby denying the former the equal protection of the law: State v. Miksicek, 125 S. W. Repr. 507; People v. Marx, 99 N. Y. 377 (2 N. E. Repr. 29); People v. Biesecker, 169 N. Y. 53 (61 N. E. Repr. 990); People v. Gillson, 109 N. Y. 389 (17 N. E. Repr. 343).

Even if the section be held constitutional the defendant should be discharged because it is not an offense against the commonwealth to sell ice cream containing less than eight per cent butter fat, as the Act of March 24, 1909,.

P. L. 63, was repealed by the enactment of the later Act of May 13, 1909, P. L. 520; Rodebaugh v. Traction Co., 190 Pa. 358; Spees v. Boggs, 204 Pa. 504; Dorrance v. Dorranceton Boro., 181 Pa. 164; Com. v. Railroad Co., 53 Pa. 62; Com. v. Huntzinger, 35 Pitts. Leg. J. 364; Ft. Pitt Bldg. & Loan Assn. v. Model Plan Bldg. & Loan Assn. 159 Pa. 308, citing Rhoads v. Bldg. & Sav. Assn. 82 Pa. 180; Gwinner v. Lehigh, etc., R. R. Co., 55 Pa. 126; Phillips v. Barnhart, 27 Pa. Superior Ct. 26.

*A. H. Woodward, M. Levant Davis, J. B. Brooks* and *J. Orin Wait,* district attorney, for appellee.—It will be noticed how comprehensive the title of this act of assembly is. The title is almost a complete index of the contents of the act, although this is not required: Blood v. Mercelliott, 53 Pa. 391; Com. v. Green, 58 Pa. 226; Washington Boro. v. McGeorge, 146 Pa. 248; Com. v. Shirley, 152 Pa. 170; Com. v. Muir, 180 Pa. 47; Com. v. Jones, 4 Pa. Superior Ct. 362; Franklin v. Hancock, 204 Pa. 110, affirming 18 Pa. Superior Ct. 398.

The act is within the police power: Powell v. Com., 114 Pa. 265; Boston Beer Co. v. Mass., 97 U. S. 25; Sharpless v. Phila., 21 Pa. 147; Com. v. Beatty, 15 Pa. Superior Ct. 5; Com. v. Muir, 1 Pa. Superior Ct. 578; Com. v. Bearse, 132 Mass. 542; Pa. R. R. Co. v. Riblet, 66 Pa. 164.

Legislation fixing standards for foods and food products is no novelty either in this state or other states. For many years, standards as to milk have been recognized as a proper exercise of police power: State v. Smyth, 14 R. I. 100; Com. v. Schaffner, 146 Mass. 512 (16 N. E. Repr. 280); Com. v. Waite, 93 Mass. 264; State v. Campbell, 64 N. H. 402 (13 Atl. Repr. 585); Kansas City v. Cook, 38 Mo. App. 660; People v. Biesecker, 169 N. Y. 53 (61 N. E. Repr. 990).

Anyone could prosecute: Com. v. Spencer, 28 Pa. Superior Ct. 301.

The act was not repealed by the food act: Sifred v. Com., 104 Pa. 179; Com. v. DeCamp, 177 Pa. 112;

Altoona v. Calvert, 7 Pa. Dist. Rep. 739; Shinn v. Com., 3 Grant (Pa.), 205; White v. Meadville, 177 Pa. 643; Mansel v. Nicely, 175 Pa. 367.

OPINION BY HENDERSON, J., February 27, 1913:

The first proposition presented by the appellant is that the title of the Act of March 24, 1909, P. L. 63, does not comply with the requirements of sec. 3 of art. III of the constitution of Pennsylvania in that it does not give sufficient notice of the provisions of sec. 4 of the statute under which the indictment was drawn. The title to the act is: "An Act for the protection of the public health and to prevent fraud and deception in the manufacture, sale, offering for sale, exposing for sale and having in possession with intent to sell, of adulterated or deleterious ice cream; fixing a standard of butter fat for ice cream; providing penalties for the violation thereof and providing for the enforcement thereof." The fourth section provides that: "No ice cream shall be sold within the state containing less than eight per centum of butter fat, except where fruits or nuts are used for the purpose of flavoring, when it shall not contain less than six per centum of butter fat." We need not refer to the numerous cases which hold that it is not necessary that the title to an act be an index of the subjects legislated about. It is sufficient if it comprehend the subject involved and fairly puts the inquirer on notice. This act has a single subject and the title covers it with a comprehensiveness more complete than is usual in legislation. It declares the purpose of the act and gives notice that penalties are provided for a violation of its terms. One of the things particularly brought to the notice of the reader is that it fixes a standard of butter fat for ice cream and it was for the violation of the law with reference to this provision that the defendant was convicted. We have no doubt that all of the provisions of the statute are cognate with the title. It is next contended that the enactment is not within the police power of the state in so far as it fixes a standard of

butter fat for ice cream. We do not understand that there is any contention that that portion of the fourth section which forbids the manufacture or sale of adulterated or deleterious ice cream is not a proper subject of legislation. We are only concerned, therefore, with the inquiry whether a statute which fixes a standard of quality for ice cream is within the police power. The purpose of the act was to suppress false pretenses and to secure honest dealing in the sale of an article of food. That ice cream is in general use is admitted; that it is largely composed of milk and cream is shown by the evidence in the case. Its name implies the use of cream in its composition, and all of the authorities to which the learned counsel for the appellant refer show that milk and cream are constituents in its composition. It enters so largely into the food supply of the public as to have become a proper subject of legislation, especially in view of the opportunities which its manufacture affords to practise imposition. In the popular understanding it is largely composed of milk of which butter fat is an important constituent. If by the exercise of ingenuity and by the practice of unwarranted thrift a product can be put on the market having the name and appearance of ice cream but lacking the chief element which gives it value as an article of food, a large opportunity would be afforded to dealers in that article to profit by deception and it is the opportunity for such deceit of which the police power takes notice and seeks to take away. It is not necessary that injury has been done or a wrong perpetrated. The possibility that such results may take place warrants legislative intervention under the police power. We are not concerned with the wisdom of legislation under this power. Our only inquiry is whether the power exists. Sovereignty is in the people and is expressed through their legislative representatives by the enactment of their will into laws. Their authority is general except as restrained by the constitution of the commonwealth or the constitution of the United States, and among leg-

islative capacities one of the largest is the exercise of the
police power.  It is more easily described than defined,
but that it extends to the protection of the lives, health
and property of the citizens and to the preservation of
good order and the public morals cannot be questioned
and these objects are to be provided for by such legis-
lation as the discretion of the lawmaking body may deem
appropriate.  It is not a successful denial of the exercise
of these powers to say that the prohibited article is whole-
some and not injurious to the consumer.  The whole-
someness of the prohibited thing will not render the act
unconstitutional.  The temptation to fraud and adul-
teration may be a consideration leading to regulative or
prohibitive legislation.  If it were not so courts would be-
come the triers of the expediency of such legislation and
the authority which the people committed to the legis-
lature would be transferred by judicial action to the
courts.  Where a statute is clearly and palpably violative
of the constitution it is the duty of the courts to declare
it invalid in the respects in which it is repugnant to this
supreme law, but the presumptions are all in favor of
the validity of legislative enactments and the burden is on
him who asserts the contrary to make it clear beyond
doubt that the constitutional power has been exceeded.
It has been the policy of this state to legislate on the
subject of milk and milk products, and statutes have been
enacted which made it unlawful for any person to sell
milk which contained less than a fixed percentage of
butter fat and less than a certain percentage of milk
solids; making it unlawful to sell cream which contained
less than a fixed percentage of butter fat; which classified
cheese and fixed the percentage of butter fat which the
various classes of cheese should contain; and similar legis-
lation has been enacted in other states: State v. Campbell,
64 N. H. 402; Com. v. Waite, 93 Mass. 264; State v. Smyth,
14 R. I. 100.  Legislation of a like character is found in
the Act of May 21, 1901, P. L. 275, forbidding the sale of
vinegar which contains less than four per cent of absolute

acetic acid.  If the sale of pure milk containing less than three and one-fourth per cent of butter fat may be prohibited it is not apparent why the same principle does not apply to ice cream.  Milk is a natural product—wholesome and useful for food.  The milk of many cows contains less than three and one-fourth per cent of butter fat.  The owners of such cattle have a constitutional right to sell the product of their dairies, but this right has been held to be subordinate to the public welfare and this welfare demands that a fixed minimum standard of butter fat shall exist in the whole milk sold in this commonwealth.  The known disposition of some dealers to cheat and the opportunity afforded them by the absence of some regulation of the business is the justification of such legislation under the police power.  Through such laws the consumers have the assurance that that which they buy is what it is called and what it appears to be, and the opportunity for imposition in selling an adulterated or inferior article of food for that which is wholesome and of a supposed standard of quality is removed.  The integrity of the act is not affected by the provision that where fruits and nuts are used for flavoring, six per cent of butter fat shall be required in ice cream.  It is obvious that the addition of fruits and nuts to a given quantity of ice cream would diminish the percentage of butter fat, and it was apparently a consideration of this fact which caused the distinction between ice cream flavored with extracts and that to which nuts or fruits were added.  No discrimination is made between individuals or preference given to particular manufacturers by this legislation and no substantial reason is advanced which would make such a regulation destructive of the whole statute.

It is not an objection to the prosecution that it was not commenced by the dairy and food commissioner. That functionary was specially charged with the enforcement of the provisions of the statute, but that did not disable any citizen of the commonwealth from appearing as a prosecutor.  The offense is a misdemeanor, and a

prosecution for a violation of the act might be instituted by any person inclined so to do.

The appellant further contends that the act under consideration was repealed by the act of May 13, 1909, relating to food; defining food and providing for the protection of the public health and the prevention of fraud and deception, etc. A comparison of the two acts shows that the latter contains no provision with reference to the quantity of butter fat necessary in ice cream, nor any provision which is inconsistent with the fourth section of the act of March 24, 1909, and as there is no express repeal, none arises by necessary implication. An earlier statute is repealed only in those particulars wherein it is clearly inconsistent and irreconcilable with later enactments. The antagonism must be so great as to convince the mind that the last enactment repealed the former. The objects of the two statutes are not the same and if so both can stand, though they may refer to the same subject. Moreover, both of these acts were passed at the same session of the legislature and the latter only a few weeks after the former. Under such circumstances there is a presumption against an implied repeal.

We do not regard the examination suggested in the twelfth and thirteenth assignments as permissible. The evidence of the experts as to the possibility that samples of ice cream taken from different parts of a can might or would exhibit a variation of butter fat content would not aid the jury in determining what were the constituents of the sample which the prosecuting witness bought and which the chemist for the commonwealth analyzed. Mr. Pelton, a witness for the commonwealth, testified that he bought a pint of chocolate ice cream from the defendant; that he asked for chocolate ice cream and that the defendant delivered to him a pint of ice cream which had the appearance of chocolate ice cream. It was this pint of ice cream which was analyzed and for the sale of which the defendant was prosecuted. It was shown to have had less than three per cent of butter fat. Theories

about what might have been found in some other part of the can from which the witness got his pint would not throw any light on the case. We are unable to obtain a point of view of the case from which we can observe any error in its trial. It was fairly presented by the learned trial judge and the law expounded in accordance with the principles which govern the case on the undisputed facts.

The assignments are overruled, the judgment is affirmed and the record remitted to the court below to the end that the sentence may be carried into execution.