## Commonwealth v. Stone

John A. F. Hall, Jr., Assistant District Attorney, and Huette F. Dowling, District Attorney, for Commonwealth.

James W. Evans, for defendant.

KREIDER, J., August 26, 1959.—Defendant, Stanley S. Stone, was indicted to nos. 57 and 58, June sessions 1958, for violating section 897 of The Penal Code of June 24, 1939, P. L. 872, as added by section 1 of the Act of November 30, 1955, P. L. 755, 18 PS §4897, making it a misdemeanor to engage in the "Budget Planning Business" as therein defined. In no. 61, June sessions 1958, defendant was indicted with Philip De-Blasio and R. E. Butler for conspiracy to violate the said act. DeBlasio was also indicted in nos. 59 and 60, June sessions 1958, for violating the said act. Defendant Stone (and DeBlasio, likewise) subsequently filed motions to quash the indictments against him on the ground that the act is unconstitutional and violates the due process clauses of the State and Federal Constitutions. On June 30, 1959, after due consideration of the arguments and briefs of counsel, this court, in a per curiam order, sustained the motions to quash all the indictments. This opinion will set forth our reasons therefor.

The fundamental question involved in all of these cases is whether the Act of 1955, making it a misdemeanor to engage in the budget planning business, as therein defined, is an unconstitutional exercise of the police power of the State in violation of article I, secs. 1 and 9, article III, sec. 7 of the Pennsylvania Constitution or the fourteenth amendment to the Constitution of the United States of America. The Penal Code of 1939, as added by the Act of 1955, 18 PS §4897, supra, provides as follows:

"(a) 'Budget Planning', as used in this section, means the making of a contract, express or implied, with a particular debtor whereby the debtor agrees to pay a certain amount of money periodically to the person engaged in the budget planning business, who

shall, for a consideration, distribute the same among certain specified creditors in accordance with a plan agreed upon.

"(b) Whoever engages in the business of budget planning is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine of not more than five hundred dollars ($500), or undergo imprisonment of not more than one (1) year, or both; Provided That the provisions of this act shall not apply to those situations involving budget planning as herein defined incurred incidentally in the practice of law in the Commonwealth."

These cases raise again the age-old conflict between the police power of the State and the due process clauses of the State and Federal Constitutions. The constitutional provisions involved are:

1. Article I, sec. 1, Pennsylvania Constitution:

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

2. Article I, sec. 9, Pennsylvania Constitution:

"In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."

3. Article III, sec. 7, Pennsylvania Constitution:

"The General Assembly shall not pass any local or special law . . . Regulating labor, trade, mining or manufacturing: . . ."

4. Section 1, Fourteenth Amendment to the Constitution of the United States of America:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Commonwealth contends that the aforementioned Act of Assembly does not violate any of the above constitutional provisions and that it is a proper and legitimate exercise of the police power. Defendant contends, on the other hand, that the act is an absolute *prohibition*, not a mere regulation, of the budget planning business and violates his right to engage in a legitimate business under the due process clauses of the State and Federal Constitutions.

The general principles by which the validity of the act in question must be determined have been expressed many times by our appellate courts. It will suffice to set them forth as summarized by our Supreme Court, speaking through Mr. Justice Chidsey in Commonwealth ex rel. Woodside v. Sun Ray Drug Company, 383 Pa. 1 (1955), as follows (pp. 10-11):

"The scope of the police power of the Commonwealth is necessarily very broad. As was stated in Commonwealth v. Stofchek, 322 Pa. 513, 185 A. 840, at p. 519: '. . . the State possesses inherently a broad police power which transcends all other powers of government. There is, therefore, no unqualified right to

acquire, possess, and enjoy property if the exercise of the right is inimical to the fundamental precepts underlying the police power. . . .' However, the basis of every exercise of the police power must be to promote or maintain the health, safety or general welfare of the public: White's Appeal, 287 Pa. 259, 134 A. 409. . . .

"The standard to be applied in this type of case was well stated by Mr. Chief Justice Stern in the recent case of Cott Beverage Corporation v. Horst, 380 Pa. 113 (1955), 110 A. 2d 405. In that case the Chief Justice, quoting from Gambone v. Commonwealth, 375 Pa. 547, 101 A. 2d 634, stated at p. 118: ' ". . . By a host of authorities, Federal and State alike, it has been held that a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive, or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests, the legislature may not arbitrarily interfere with private business or impose unusual or unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts" '. . . ."

The Commonwealth contends that the act does not arbitrarily, unreasonably and unnecessarily interfere with private business or property and that despite its title, "An Act . . . prohibiting budget planning business, and prescribing penalties for violation thereof," the act in fact does not prohibit the business of budget planning. The Commonwealth says the act is regulatory only, that it allows budget planning but does not

allow the budget planner to collect and distribute the debtor's money to the debtor's creditors.

We think the Commonwealth's argument on this point is not sound. We believe the act as written is in fact an absolute prohibition against the business of budget planning and that to deny the budget planner the right, at the request of the debtor, to receive money from the debtor and "distribute the same among certain specified creditors in accordance with a plan agreed upon," constitutes a nullification of a vital factor of the budget planning business.

A further contention of the Commonwealth is that "the budget planning business as detailed in the act is against the public interest." It bases this contention upon its allegation that the planner's activity in collecting and distributing the debtor's money "affords the budget planner the opportunity to defraud the public by reprehensible practices." The mere *possibility*, however, that one engaged in a lawful business may also engage in unlawful practices is no justification for prohibiting the business, if it be a legitimate one in the first instance. Practically every business and profession affords an opportunity for those engaging in it to perform reprehensible acts, but this is no reason why persons should be denied the opportunity to engage in a lawful business. A similar contention was made by the Commonwealth but rejected by the Supreme Court in Commonwealth ex rel. Woodside v. Sun Ray Drug Company, 383 Pa. 1 (1955), supra, at page 11, wherein the court stated:

"The contention of the Commonwealth when reduced to its essentials is that the common good or general welfare is protected by the prohibition of the sale of Malt-A-Plenty base as such to retailers because such sales create *a possibility* of confusing, defrauding or deceiving the public in that the retailer *may* sell the

base as ice cream. As has been previously pointed out, Commonwealth v. Crowl, supra, [52 Pa. Superior Ct. 539] did not go that far. It merely sustained the legislation as constitutional on the assumption that it prohibited the sale of such products *as ice cream* where such products have less than the minimum butterfat content. In such a case the deception or possibility of deception is obvious. If, in the instant case, there had been any evidence of sales of the Malt-A-Plenty base as ice cream, such sales could unquestionably be restrained."

In the instant case, it goes without saying that should any one engage in reprehensible practices as a business budget planner, the Commonwealth has a speedy and adequate remedy by criminal prosecution as well as other methods of legal restraint.

Defendant's basic contention, as above stated, is that the act in question is *not* a mere *regulation* but an absolute *prohibition* of the budget planning business and that it violates his right to engage in a legitimate business under the due process clauses of the State and Federal Constitutions. It is contended that the prohibited business is that of representing a debtor by distributing, on behalf of the debtor, an amount of money set aside by the debtor for certain specified creditors of the debtor for which a service fee is paid. It is said, moreover, that this particular field of legislation is not new to Pennsylvania and that The Penal Code of June 24, 1939, P. L. 872, sec. 895, 18 PS §4895, known as the unlawful collection agency practices law, deals with and regulates, but does not *prohibit*, the manner in which a person represents a *creditor* by enforcing, collecting, settling, adjusting or compromising claims *on behalf of the creditor and against the debtor*. It is claimed that the unlawful collection agency practices law, by imposing *regula-*

*tions* upon the manner in which creditors may be represented, impliedly recognizes that representation of creditors for collection purposes is a legitimate field of business, provided only that it is conducted within the limits of the act.

Defendant argues that since this is the situation where creditors are concerned, it is unfair and unjust that a business purporting to represent a debtor in his dealings with a creditor or creditors, should be prohibited absolutely. The gist of defendant's argument on this point obviously is that, since the General Assembly of Pennsylvania permits creditors to have a paid representative to represent them in their efforts to collect, settle, adjust or compromise their claims, a debtor is entitled to have simliar representation in the form of a person engaged in the budget planning business, especially since there is no discretion or authority in the person engaged in the budget planning business, and the debtor, not the planner, is the sole judge as to what creditors are to be paid, how much they are to be paid, and when they are to be paid.

It cannot be denied that credit buying today is the keystone of economics in the consumer goods field. It is well known that millions of sales are made in the United States on the installment plan and that billions of dollars are involved in such transactions.* The pub-

---

* The enormous growth of installment buying is graphically set forth in the news letter of July 13, 1959, issued by Business News Associates, Inc., New York, wherein it is stated:

"Consumers hiked their outstanding instalment debt load by a seasonally adjusted $443 million in May, the largest single monthly increase since September 1955 (at the peak of the last credit surge). Moreover, the increase carried outstanding instalment debt to a record $35 billion, toppling the $34.5 billion record set only a month earlier. New credit extended during the month spurted to more than $4 billion on an adjusted basis, also setting a new record."

lic is constantly being urged to buy now and pay later, and this seems to include almost everything from the cradle to the grave. This frequently results in persons or families over-extending themselves and their ability to pay for the many items they have purchased on credit. An unexpected cessation of employment or other untoward event may cause a drastic curtailment of installment payments, and the consequent threat of repossession of the goods purchased on the time payment plan. When this melancholy moment arrives, the creditor may turn his claim over to a collection agency and thereby relieve himself to some extent of the stress and strain attendant upon the collection of the debt. The debtor, on the other hand, is prohibited by the Act of Assembly in question from paying a certain amount of money periodically to a person engaged in the budget planning business, who shall, for a consideration, "distribute the same among certain specified creditors in accordance with a plan agreed upon." We see no sound reason for thus discriminating against the debtor. Counsel for defendant in his brief says that research fails to disclose a similar statute in any other State in the Union, that it appears this statute is unique and original in its prohibition and that research reveals no legislative committee notes explaining the purpose of this legislation, and none have been called to our attention by counsel for the Commonwealth. Moreover, our own independent research fails to disclose any clue as to the purpose underlying the enactment of this statute.

That the field of budget planning business is a legitimate one, but one which should be regulated by the General Assembly, may be deduced from the decision in Commonwealth v. U. S. Commercial Services, Inc., 179 Pa. Superior Ct. 395 (1955), where defendant was

charged with violating section 895(e) of The Penal Code, 18 PS §4895, which provides:

"It is unlawful for a collection agency to act for, represent or undertake to render services for any debtor with regard to the proposed settlement or adjustment of the affairs of such debtor, whether such compromise, settlement, or adjustment be made through legal proceedings or otherwise, or to demand, ask for, or receive any compensation for services in connection with the settlement or collection of any claim except from the creditor for whom it has rendered lawful services."

The gist of the offense there was that, though the collection agency could represent a creditor and charge a reasonable fee for such services, it could not represent both the debtor and the creditor, because of the obvious conflict of interest. At page 397, the Superior Court said:

"The evil which the Unlawful Collection Agency Practices Act was designed to eliminate was the practice of representing both debtors and creditors at the same time. . . ."

In the above case, defendant-collection agency was found to have held itself out as a creditor's representative although it performed services for a debtor, and its president testified that defendant's "major business is consolidation of debts and budgeting income so that they can pay their creditors." Defendant was found guilty of having performed a service for a debtor, not because it consolidated debts and budgeted income.

In Adams v. Tanner, 244 U. S. 590 (1917), a State statute making it a misdemeanor to engage in the employment agency business for a fee, was held unconstitutional because it was in violation of the fourteenth amendment to the Constitution of the United States of America. The Supreme Court of the United States held that the business was not inherently immoral or

dangerous to the public welfare and, therefore, should not be prohibited, although it could be regulated. That court, at page 593, said:

". . . The statute is one of prohibition, not regulation. . . .

"We have held employment agencies are subject to police regulation and control. 'The general nature of the business is such that unless regulated many persons may be exposed to misfortunes against which the Legislature can properly protect them,' Brazee v. Michigan, 241 U. S. 340, 343. But we think it plain that there is nothing inherently immoral or dangerous to public welfare in acting as paid representative of another to find a position in which he can earn an honest living. On the contrary, such service is useful, commendable, and in great demand. In Spokane v. Macho, 51 Washington, 322, 324, the Supreme Court of Washington said: 'It cannot be denied that the business of the employment agent is a legitimate business, as much so as is that of the banker, broker, or merchant; and under the methods prevailing in the modern business world it may be said to be a necessary adjunct in the prosecution of business enterprises.' . . ."

In the instant case, we believe that the business of budget planning as described in the Act of Assembly is not inherently immoral or dangerous to public welfare and that, therefore, it should not be prohibited, although it should be regulated. The act as presently drawn unduly restricts the liberty of persons, guaranteed by the fourteenth amendment to the Constitution of the United States and by the Constitution of Pennsylvania, to engage in a useful business. Therefore, it may not be enforced against defendant. It was for these reasons that in these and their companion cases we quashed the indictments in our per curiam order.