## Cott Beverage Corporation *v.* Horst, Appellant.

114

Argued November 17, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Samuel M. Jackson,* Deputy Attorney General, with him *Robert H. Maurer,* Deputy Attorney General, and *Frank F. Truscott,* Attorney General, for appellants.

*Charles E. DeLong,* with him *Henry A. Frye* and *Moffett, Frye & Leopold,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 3, 1955:

Questioned here are the applicability of certain statutes of the Commonwealth to the article in controversy and their constitutionality if so applied.

The article in controversy is Sucaryl, which is a synthetic, non-nutritive, non-caloric, artificial sweetening agent recommended by physicians in the treatment of obesity and diabetes, but purchasable in any drug store without a doctor's prescription. Beverages sweetened by it are presently sold in at least 34 of the States from Maine to California. It may be prepared either as calcium cyclamate or sodium cyclamate, and in liquid, tablet or powder form. It is a trade-name product manufactured by the Abbott Laboratories of Chicago.

Plaintiff Cott Beverage Corporation manufactures and sells a sugar-free (dietetic) brand of non-alcoholic carbonated beverages sweetened with sucaryl. Plaintiff Cott Bottling Company of Pittsburgh is a licensee of Cott Beverage Corporation authorized to distribute such beverages in Pennsylvania. Plaintiffs filed applications to register their beverages so sweetened; they received certificates of registration from the Department of Agriculture but subsequently were advised by the Department that the certificates were not intended to confer any exemption from the provisions of the law regarding such beverages. Thereupon plaintiffs filed a bill in equity in the Court of Common Pleas of Dauphin County alleging the likelihood of a multiplicity of suits against them for the recovery of fines and penalties and seeking to enjoin the Secretary of Agriculture and the Attorney General from enforcing certain provisions of the law which would in effect prohibit the manufacture of carbonated beverages or still drinks containing artificial sweetening agents. The court entered a decree restraining and enjoining defendants

from prohibiting plaintiffs from selling non-alcoholic carbonated beverages containing sucaryl and no honey, sugar or dextrose, and from requiring on such drinks a certain label prescribed by the Department of Agriculture. From that decree defendants appeal.

The Acts involved are these: The Act of May 14, 1925, P. L. 730, §5, as amended, provides that "No carbonated beverages or still drinks shall be made except from syrup containing pure honey or pure refined cane or beet sugar or pure refined dextrose . . . . Such carbonated beverages or still drinks shall contain not less than eight per centum sugars by weight." It further provides that all carbonated beverages or still drinks shall be deemed to be adulterated which are not in compliance with the above provisions of the section, or which contain any of the ingredients prohibited by section 3 of the Act of March 11, 1909, P. L. 15, or which contain "any other substance deleterious to health." Section 3 of the Act of March 11, 1909, P. L. 15, thus referred to, provides that a non-alcoholic drink shall be deemed to be adulterated, within the meaning of the act, if, inter alia, it contains dulcin, glucin, saccharin (which are artificial sweetening agents) or "other added substance deleterious to health." The Act of May 13, 1909, P. L. 520, entitled "An Act relating to food," etc., as amended, provides, section 3, that an article of food shall be deemed to be adulterated if, inter alia, it contains saccharin, "or other artificial sweetening agents"; provided, however, that "any article of food containing saccharin or any artificial sweetening agent may be manufactured, transported or sold if it contains no added sugar, honey, or other natural sweetening agent, and the name of the artificial sweetening agent followed by the word 'sweetened' is placed upon the label each time the name of the article of food is mentioned, in type no smaller than the largest type on

said label. Said label shall also contain such appropriate warning statement as shall be prescribed by the Department of Agriculture."

As far as the Act of May 14, 1925, P. L. 730, is concerned, the provision that no carbonated beverages or still drinks should be made except from syrup containing pure honey, sugar or dextrose, and must contain not less than 8% sugars by weight, prevents, of course, the use of sucaryl as a sweetening agent in such drinks and beverages. Plaintiffs contend, and the court below sustained their contention, that the act, so far as it effects such result, is invalid and unconstitutional because it violates the Fourteenth Amendment in that it deprives plaintiffs of their property without due process of law, and also violates Article I, Section 1, of the Constitution of Pennsylvania which provides that it is an inherent and indefeasible right of all men to acquire, possess and protect property. The court below found, and defendants admit, that sucaryl is not deleterious to health, especially when prepared in the form of calcium cyclamate which is the product manufactured by Abbott Laboratories and used in the carbonated non-alcoholic beverages manufactured, sold, bottled and distributed by plaintiffs.[1] Being non-caloric it is useful in diets for the restriction of sugar intake and therefore is especially indicated for diabetics and for persons aiming to reduce excessive weight. Under such circumstances the question is whether a legislative act can arbitrarily forbid its manufacture and use.

The answer to that question is resolved by the decision of this Court in *Gambone v. Commonwealth,* 375 Pa. 547, 101 A. 2d 634, where it was said (pp. 550-552,

---

[1] The most that can be said against sucaryl is that in some individuals an excessive intake of it may produce a mild laxative effect and that patients on a low-salt or salt-free diet should use the calcium rather than the sodium form.

A. pp. 636, 637) : "Probably the most important function of government is the exercise of the police power for the purpose of preserving the public health, safety and morals, and it is true that, to accomplish that purpose, the legislature may limit the enjoyment of personal liberty and property. It is also true, as stated in *Commonwealth v. Zasloff*, 338 Pa. 457, 460, 13 A. 2d 67, 69, that the police power has been juridically extended to many fields of social and economic welfare. But, as likewise there stated, the power is not unrestricted; its exercise, like that of all other governmental powers, is subject to constitutional limitations and judicial review. By a host of authorities, Federal and State alike, it has been held that a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive, or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts." In support of the statement that "a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive, or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained" are cited a great number of decisions of the United States Supreme Court and the appellate courts of this Commonwealth.

In *Lawton v. Steele,* 152 U. S. 133, 137, it was said: ". . . the State may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. . . . To justify the State in thus interposing its authority in behalf of the public, it must appear . . . that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. . . . Its [the legislature's] determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

In *Nebbia v. New York,* 291 U. S. 502, 525, it was said: "The Fifth Amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. They merely condition the exertion of the admitted power by securing that the end shall be accomplished by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained."

It is true that, even if an article is not itself harmful for human consumption, its use may be regulated and restricted, or even wholly forbidden, by legislative authority if involved in its use there is danger of fraud or deception whereby it may be imposed upon the public as a counterfeit article for the genuine. This was the basis for the decisions in such cases as *Powell v. Commonwealth,* 114 Pa. 265, 7 A. 913, aff. 127 U.S. 678; *Commonwealth v. Crowl,* 245 Pa. 554, 91 A. 922, aff. 242 U.S. 153; *Carolene Products Co. v. Harter,* 329 Pa.

49, 197 A. 627; *United States v. Carolene Products Co.,* 304 U.S. 144. But here there is no such danger. As sold in bottle form Sucaryl is labeled as what it is, namely, a non-nutritive, artificial sweetner to be used by persons who must restrict their intake of ordinary sweets, and when used to sweeten carbonated beverages the consumer is naturally without interest or concern as to the sweetening agent employed. It is not a cheap substitute for natural sugar, but, on the contrary, is more expensive than sugar because of the cost of the ingredients which enter into its composition, and the beverages containing it are accordingly sold at a higher price.

As far as the Act of March 11, 1909, P. L. 15, Section 3, is concerned, which provides that a non-alcoholic drink shall be deemed to be adulterated if it contains certain substances,—not mentioning sucaryl,—"or other added substance deleterious to health", it is sufficient to repeat what has heretofore been said, that, admittedly, sucaryl is not deleterious to health.

This brings us to a consideration of the Act of May 13, 1909, P. L. 520, as amended, which is generally referred to as the General Food Law. It permits the manufacture and sale of articles of food containing an artificial sweetening agent if they contain no added sugar, honey or other natural sweetening agent, if they are properly labeled, and if the label contains an "appropriate warning statement" to be prescribed by the Department of Agriculture. Acting under that provision the regulations of the Department of Agriculture provide for a label with a black border which reads "Warning! This product contains the drug (name). Caution! Do not use this product unless advised to do so by your personal physician."

The question arises whether carbonated beverages and still drinks come within the scope of this Act of

May 13, 1909, P. L. 520, since it deals exclusively with articles of "food," food being defined as including "not only every article used for food by man, but also every article used for, or entering into the composition of, or intended for use as an ingredient in the preparation of, food for man,"—a definition which throws little if any light on the scope of the term "food" as employed in the act. Does it include carbonated beverages? Food is defined in Webster's New International Dictionary as *"nutritive material* absorbed or taken into the body of an organism which serves for purposes of growth, work, or repair and for the maintenance of the vital processes." Sucaryl is not "nutritive material." In *Commonwealth v. Kebort,* 212 Pa. 289, 61 A. 895, it was held that an act entitled "An Act to provide against the adulteration of *food,"* and which provided in the body of the act that "The term 'food' as used herein shall include all articles used as food or drink by man," was unconstitutional as applied to drink because it violated the provision of Section 3, Article III, of the Constitution relating to the title of statutes. The court said (pp. 291-292, A. p. 896) : "The words food and drink in common usage and under-standing are complementary and associate terms, denoting the two prime necessities of life, but they are so far from synonymous that they import a plain and fundamental distinction, as universal as language and as old as the human race . . . . No liquor dealer, . . . having a wakeful eye to the strict regulations of his business by the other statutes, would suppose he was to be affected by a new act with a title indicating food as its only subject. Nor is it reasonable to suppose that his representative in the legislature so intended." In *Commonwealth v. Pflaum,* 236 Pa. 294, 297, 84 A. 842, it was said that sugar and honey are food; sugar and honey, of course, are nutriment, but sucaryl is not;

sucaryl is an inert substance having no food value whatever. It becomes the more abundantly clear that the legislature did not intend to include drinks in the term "food" as used in the Act of May 13, 1909, P. L. 520, when it is noted that in that same session of the legislature the Act of March 11, 1909, P. L. 15, was passed providing separately for non-alcoholic drinks. And since, therefore, the Act of May 13, 1909, P. L. 520, does not apply to carbonated non-alcoholic drinks, the requirement of that act that the label should contain an appropriate warning statement prescribed by the Department of Agriculture does not affect the product here in controversy. Indeed, in any event, as the court below properly held, the warning prescribed by the Department was not "appropriate" but wholly unreasonable and unnecessarily alarming, since it would naturally tend to discourage the purchase and use of what admittedly is a harmless product.

As already stated, the Act of May 13, 1909, P. L. 520, permits the manufacture and sale of articles of food containing artificial sweetening agents, whereas the Act of May 14, 1925, P. L. 730, forbids the manufacture of carbonated beverages or still drinks containing other than natural sweetening agents. This arbitrary discrimination in itself establishes the invalidity of the latter act, for it is obvious that if it is proper and not deleterious to health to use artificial sweetening agents in food there is no justification for forbidding their use in carbonated beverages or still drinks; (cf. *State v. Empire Bottling Co.*, 261 Mo. 300, 168 S.W. 1176).

Because of all the reasons thus expressed we are in accord with the conclusions of law of the court below that the Act of May 13, 1909, P. L. 520, does not apply to carbonated beverages and still drinks, and that the Act of May 14, 1925, P. L. 730, as amended,

violates the Fourteenth Amendment to the Constitution of the United States and Article 1, Section 1, of the Constitution of Pennsylvania, to the extent that it prohibits the use of sucaryl as a sweetening agent in non-alcoholic carbonated beverages and still drinks and requires the use of honey, sugar, or dextrose in such drinks and beverages.

The final decree of the court below is affirmed.