## Commonwealth v. Mengel

*Robert M. Harris*, for Commonwealth.

*E. Mac Troutman*, for defendant.

STAUDENMEIER, J., October 26, 1959.—This matter comes before the court on defendant's appeal from a summary conviction for an alleged violation of the Act of May 13, 1909, P. L. 520, sec. 3(*a*), 31 PS §3.

The information charged defendant with unlawfully offering for sale, exposing for sale and having in his possession with intent to sell and selling to a senior food inspector a certain article of food, to wit, cider, which was then and there adulterated by containing insect parts, contrary to the provisions of the Act of May 13, 1909, supra. Counsel for defendant moved to quash the information claiming that the information was improperly made under the Act of 1909, supra, rather than the Act of July 5, 1895, P. L. 605, 71 PS §1241-§1246.

The Act of May 13, 1909, P. L. 520, as amended, which is generally referred to as the General Food Law, is entitled: "An Act relating to food: defining food; providing for the protection of the public health, and the prevention of fraud and deception, by prohibiting the manufacture or sale, the offering for sale or

exposing for sale, or the having in possession with intent to sell, of adulterated, misbranded, or deleterious foods; prescribing certain duties of the Dairy and Food Commissioner in reference thereto; and providing penalties for the violation thereof."

The information was drawn under the sixth paragraph of the third section of the act, which declares that an article of food shall be deemed to be adulterated: "Sixth. If it consists of, or is manufactured in whole or in part from, a diseased, contaminated, filthy, or decomposed substance, either animal or vegetable; or an animal or vegetable substance produced, stored, transported, exposed, or kept in a way or manner that might tend to render the article diseased, contaminated, or unwholesome; or if it is any part of the product of a diseased animal, or the product of an animal that has died otherwise than by slaughter": 31 PS §3(a).

The question arises whether "cider" comes within the scope of the General Food Law of May 13, 1909, P. L. 520, since it deals exclusively with articles of "food". Section two of the act defines "food" as including "not only every article used for food by man, but also every article used for, or entering into the composition of, or intended for use as an ingredient in the preparation of, food for man," which definition the Supreme Court, in an opinion by Chief Justice Horace Stern, stated, "throws little if any light on the scope of the term 'food' as employed in the Act": Cott Beverage Corporation v. Horst, 380 Pa. 113, 121, 110 A. 2d 405. Does it include "cider," the drink in controversy in the instant proceeding?

"Food" is defined in Webster's New International Dictionary, vol. 1, p. 982, as "nutritive material absorbed or taken into the body of an organism which serves for purposes of growth, work, or repair and for the maintenance of the vital processes."

In Commonwealth v. Kebort, 212 Pa. 289, 61 Atl. 895, it was held that the Act of June 26, 1895, P. L. 317, entitled: "An Act to provide against the adulteration of food, and providing for the enforcement thereof," which provided in section 2 that "the term 'food,' as used herein, shall include all articles used for food or drink by man whether simple, mixed or compound," was unconstitutional as applied to drink, because it violated the provisions of article III, sec. 3, of the Constitution of Pennsylvania relating to the title of statutes.

The court said, pages 291-292: "The words food and drink in common usage and understanding are complementary and associate terms, denoting the two prime necessities of life, but they are so far from synonymous that they import a plain and fundamental distinction as universal as language and as old as the human race. No tongue is so primitive that it lacks different words to indicate them and different words to express the sensations of want of them, as hunger and thirst . . .

"No liquor dealer, . . . having a wakeful eye to the strict regulations of his business by the other statutes, would suppose he was to be affected by a new act with a title indicating food as its only subject. Nor is it reasonable to suppose that his representative in the legislature so intended. The act is clearly unconstitutional as far as it assumes to apply to drink."

In Cott Beverage Corporation v. Horst, supra, page 122, the court said: "It becomes the more abundantly clear that the legislature did not intend to include drinks in the term 'food' as used in the Act of May 13, 1909, P. L. 520, when it is noted that in that same session of the legislature the Act of March 11, 1909, P. L. 15, was passed providing separately for non-alcoholic drinks."

Now we all know and the lexicographers agree that "cider" is the juice of apples either before or after

fermentation. Webster defines "cider" as the expressed juice of apples used for drinking and for making vinegar. Black's Law Dictionary, 4th Ed., p. 307, differentiates between "hard cider" and "sweet cider". "Hard cider.—Fermented cider, a strong spirituous, and intoxicating drink." "Sweet cider.—Cider before fermentation, or cider in which fermentation has been prevented—cider not yet become hard. . . . A non-alcoholic beverage composed of the expressed juice of apples."

It is significant that it is specifically provided that the Act of May 13, 1909, P. L. 520, shall not apply to nor in any way affect the Act of June 18, 1897, P. L. 168, nor the amendment thereto, as set forth in the Act of May 21, 1901, P. L. 275, which act and amendment provided for the regulation of the manufacture and sale of distilled and fermented vinegar made wholly from grapes, *apples* or other fruits. (Italics supplied.) Hence, if the Act of 1909 has any application at all to cider, it would have to apply to it as a beverage, as a drink. It can be stated without fear of successful contradiction that in no common parlance would cider ever be called anything other than a beverage or drink, and that by no ordinary person would it ever be thought of as anything other than a beverage or drink, and remembering the generic distinction, emphasized in Commonwealth v. Kebort, supra, in the thought and speech of the race from time immemorial between "food" and "drink", the law cannot call it anything else.

We are of the opinion that it cannot be seriously contended that cider comes within the normal connotation of the word "food" as defined in the Act of May 13, 1909, P. L. 520. Until the legislature speaks more plainly than it has to date, that it is its intention to include drinks such as cider in the General Food Law, we have no alternative except to conclude that cider is

not comprehended within the provisions of said law, and that the apple product statute, the Act of July 5, 1895, P. L. 605, 71 PS §1241-§1246, not having been repealed specifically by the General Food Law, is not repealed by implication by the said law on the basis that said General Food Law is later in date of enactment.

The General Food Law of May 13, 1909, P. L. 520, being penal, must be strictly construed.

For the reasons above set forth we conclude as a matter of law that the Act of May 13, 1909, P. L. 520, does not apply to cider, and defendant's conviction under it cannot be sustained.

And now, October 26, 1959, the motion to quash the information is sustained and the judgment of the justice of the peace is set aside.

And now, October 26, 1959, upon motion of the district attorney, an exception is allowed.