Dagmar READEY, Edward L. Glauert, Hiram Schmedel, Chris J. Muckerman, Henry J. Johnson, Robert Burkham, Mignon E. Dietrich, and Jack Welch, Jr., Respondents,

v.

ST. LOUIS COUNTY WATER COMPANY, a Corporation, Defendant,

and

Thomas C. Dunne, Maurice M. Abramson, John J. Dowling, Richard A. Hetlage, Russell A. Grantham, George E. Bohrer, John F. Molloy, Members of the County Council of the County of St. Louis, Missouri, Edward A. Walsh, County Clerk of St. Louis County, Missouri, Dr. C. Howe Eller, Acting Health Commissioner of the County of St. Louis, Missouri, and Successors in Office, Appellants.

No. 48453.

Supreme Court of Missouri,
Division No. 1.

Dec. 11, 1961.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 8, 1962.

William E. Gallagher, County Counselor of St. Louis County, Clayton, Richard E. Crowe, Warren H. Ritchhart, Asst. County Counselors, for appellants.

Louis L. Hicks, Clayton, for plaintiffs-respondents.

Edgar M. Eagan, Jefferson City, amicus curiae for Missouri State Dental Ass'n.

Walter A. Raymond, Kansas City, amicus curiae pro se.

COIL, Commissioner.

In June 1959 the St. Louis County Council enacted an ordinance which directed the St. Louis County Water Company to introduce a sufficient quantity of the fluoride ion into the water it furnished county consumers to maintain throughout the distribution system a fluoride concentration of approximately one part fluoride per million gallons of water, and which directed the Water Company to make certain tests and keep certain records, and which directed the county health commissioner to make periodic reports to the council on the fluoridation of the water supply and to arrange for surveys and research into the beneficial effect of the program.

Respondents are eight resident taxpayers of St. Louis County and are consumers of water distributed by the Water Company, some of whom resided in various municipalities within the county. They brought an action against the Water Company, the then members of the county council, the county clerk, and the acting county health commissioner, to enjoin the enforcement of the ordinance for the averred reason that it was invalid in that it violated stated provisions of the federal and Missouri Constitutions and provisions of specified state laws.

At the close of respondents' evidence the trial chancellor sustained Water Company's motion to dismiss and there has been no appeal from the ensuing judgment of dismissal. At the close of all the evidence the trial chancellor enjoined the remaining defendants below from enforcing the ordinance for the stated reason that it was void in that it violated provisions of the state and federal constitutions in the respects to be hereinafter noted.

Those defendants have appealed and contend that the trial court erred for the reason that the ordinance is a valid exercise of the county council's police power to promote the public health. Respondents here seek to support the trial court's ruling for the stated reasons that the ordinance is unconstitutional in that it violates the Fourteenth Amendment to the Constitution of the United States and Article I, Section 10 of the Missouri Constitution, V.A.M.S., in that it unduly infringes their and other county residents' freedom of choice in matters relating to bodily care and health by compelling them to drink fluoridated water against their wills; that the ordinance violates the First Amendment to the Constitution of the United States in that it subjects Christian Scientists living in St. Louis County to forced medication contrary to their religious beliefs; that the ordinance violates Article VI, Section 18(c) of the Constitution of Missouri in that it applies to the entire county, including the county municipalities, and therefore its enactment was beyond the power of the county council; and that the enforcement of the ordinance would violate Missouri statutes relating to the adulteration and misbranding of nonalcoholic drinks.

■ Inasmuch as the validity of the contention that the ordinance violates Article VI, Section 18(c) of the Missouri Constitution depends on the question whether the council had the power and authority to have enacted any ordinance purporting to deal with matters relating to the public health of persons residing within county munici-

palities, and inasmuch as an affirmance of the trial court's ruling on that question would be dispositive of the case, we shall first consider that contention.

The ordinance in question contemplates, and its enforcement would involve, the addition of a quantity of the fluoride ion to all of the water leaving Water Company's purification plant and such water is sold to consumer residents of St. Louis County who live both within and without incorporated areas of the county, and the water so furnished is, for all practical purposes, the only water available to county residents.

Article VI, Sections 18 through 20, 1945 Missouri Constitution, authorizes special charters for the government of certain counties and authorizes the inclusion of specified provisions in those charters. Section 18(c) is: "The charter may provide for the vesting and exercise of legislative power pertaining to public health, police and traffic, building construction, and planning and zoning, in the part of the county outside incorporated cities; and it may provide, or authorize its governing body to provide, the terms upon which the county shall perform any of the services and functions of any municipality, or political subdivision in the county, except school districts, when accepted by vote of a majority of the qualified electors voting thereon in the municipality or subdivision, which acceptance may be revoked by like vote." 2 V.A.M.S.

Pursuant to that constitutional authorization, St. Louis County's Home Rule Charter provided in Article III, Section 22(20) that the council should have the power by ordinance "To exercise legislative power pertaining to public health, police and traffic, building construction, and planning and zoning, in the part of the County outside incorporated cities, and on such other subjects as may hereafter be authorized by the Constitution or by law, provided that, until superseded by ordinances of the Council, the laws pertaining to said matters shall continue to be valid and effective." And

Section 22(19) provided that the council should have power by ordinance "To provide the terms upon which the County shall perform any of the services and functions of any municipality or political subdivision in the County, except school districts, when accepted by a vote of a majority of the qualified electors voting thereon in such municipality or subdivision, which acceptance may be revoked by a like vote; and to cooperate and contract with the municipalities or political subdivisions in the County as otherwise authorized by this charter and by law."

It was the opinion of the trial chancellor and it is the contention of respondents here that the ordinance in question violates the constitutional and charter provisions above set forth for the reason that the county council's power to enact public health ordinances was limited to the enactment of ordinances affecting only those areas outside incorporated cities. It is apparent that respondents' position is correct if the council's power in the premises is derived solely from Article VI, Section 18(c) of the Constitution and Article III, Section 22(20) of the County Charter. The fact is, however, that the county council's power in certain matters, including the enactment of ordinances which tend to enhance the public health, is not limited to the power conferred by Article VI, Section 18(c) of the Constitution and set forth in Article III, Section 22(20) of the County Charter. On the contrary, St. Louis County may also exercise the powers pertaining to the public health validly conferred by the state upon counties of the first class. Article IV, Section 37 of the Missouri Constitution declares that "The health and general welfare of the people are matters of primary public concern" and the general assembly shall establish a department of public health and welfare and may grant power with respect thereto to counties, cities, or other political subdivisions of the state. The legislature, as directed, established a department of public health and welfare and, among others, enacted Section 192.300 RSMo 1959 and

12 V.A.M.S., which provides in part: "The county courts of the several counties of class one are hereby empowered and permitted to make and promulgate such rules, regulations or ordinances as will tend to enhance the public health and prevent the entrance of infectious, contagious, communicable or dangerous diseases into such county; provided such rules, regulations and ordinances shall not be in conflict with any rules or regulations authorized and made by the division of health in accordance with this chapter."

Article I, Section 2 of the County Charter provides: "The County shall have all the powers now or hereafter vested by the Constitution and laws of Missouri in county courts, county offices, counties of the first class, counties having the population or assessed valuation of taxable property of St. Louis County, Missouri, and counties of any other class in which St. Louis County may hereafter be includable, and all the powers provided in this Charter, and all other powers that are necessarily implied under the powers so granted."

It appears, therefore, that by virtue of the constitutional, statutory, and charter provisions last above set forth, the county council was and is authorized to enact ordinances tending to enhance the health of all the residents of St. Louis County, irrespective of whether they also reside within a municipality. See State ex rel. Shepley v. Gamble, Mo., 280 S.W.2d 656.

Assuming, then, for the present that the ordinance in question is one which was intended to and which does tend to enhance the public health, a question we shall later discuss, we hold that the county council had the authority and the power to enact such an ordinance applicable county-wide and, consequently, that the ordinance does not violate Article VI, Section 18(c) of the Missouri Constitution or Article III, Section 22(20) of the St. Louis County Charter.

It should be here noted that there is no claim or contention that in enacting the ordinance the county council acted arbitrarily or without sufficient investigation or upon insufficient knowledge; nor is there any contention that there was any procedural irregularity with respect to the enactment of the ordinance in question. Even though there is no showing in the present record as to what information the council had upon which it based the exercise of its legislative power in enacting the ordinance, in the absence of any contention as to insufficiency of information and in the absence of any claim of procedural irregularity, we should and do assume that the council had the information and knowledge which the evidence in the present record affords.

As we have heretofore indicated, there is no dispute about the fact that, generally speaking, a resident of St. Louis County, whether within or without a municipality, must use water supplied by the Water Company (although the evidence does show that the City of Kirkwood, a municipality within the county, had been fluoridating its water for a period of two years prior to the trial, but the record does not show whether Kirkwood's water is from some other source or whether that city further treats water which it purchases from the Water Company). Further, there is no dispute about the fact that the Water Company obtains the water it supplies from the Missouri River and that such water as it is taken from the river contains an average of .5 part of the fluoride ion per million gallons of water and that such fluoride content is not removed from the water but remains in it and, thus, that the Water Company, irrespective of the ordinance, furnishes water fluoridated to the level of one-half part fluoride to each one million gallons of water; so that the effect of the ordinance is to require the Water Company only to supplement the existing concentration of fluoride by adding one-half part per million gallons in order that there will be a total of one part fluoride per million gallons of water.

It appears also that there is no dispute about the facts that the fluoride ion in water acts upon the individual who drinks the water rather than upon the water as such as a purifying agent and, consequently, the ordinance requirement for an additional amount of the fluoride ion is for the purpose of affecting the dental health of each individual who consumes the fluoridated water; and that dental caries or tooth decay is not a contagious or communicable disease and cannot produce an epidemic.

■ Respondents adduced evidence, including the opinions of apparently well-qualified experts, tending to establish the proposition that the ingestion of water containing any fluoride is harmful to the individual consuming it and that water containing one part fluoride to a million gallons of water is harmful in many ways. That evidence tended to show that ten to forty per cent of children between the ages of 5 and 13 who consume water fluoridated one part to a million will have disfigured teeth, including mottled or discolored enamel; that older people consuming such water will suffer from gastrointestinal disturbances including nausea, vomiting, constipation, and diarrhea; that they will also sustain damage to the liver and kidneys and, under some circumstances, to other vital organs such as the aorta, and suffer abnormalities in bone growth and bone structure; that pregnant women consuming such water will sustain injury and bear children whose teeth will show later damage; that certain people, as a result of drinking such water, develop arthritic changes in the lower spine, neuromuscular changes in the arms and legs, partial palsy of the arms and legs, abnormal reflexes, severe headaches, and extreme weakness.

Respondents' evidence tended to show further that fluorine is not an essential element of the human body and that all chemicals bearing the fluoride ion are insidious poisons and are cumulative in the human body; that due to the fact that different people drink different amounts of water and the same person consumes different amounts of water depending upon the time of year and for other reasons, it is difficult if not impossible to control the amount of the fluoride ion ingested by a particular individual when a specified amount is introduced into a public water supply; and that there are methods other than the addition of the fluoride ion to the public water supply by which fluorine may be applied to the teeth, such as an application by a dentist directly on the teeth or by fluoridating an individual user's water supply by dissolving tablets therein.

Appellants adduced evidence, including the opinions of apparently well-qualified experts, tending to establish the proposition that fluoridation of water as proposed by the ordinance in question would result in harm to no one but, on the contrary, would be highly beneficial to the residents of St. Louis County in that it would reduce dental decay in children up to 14 years of age by as much as sixty-five per cent by means of hardening the enamel on their teeth, and that this same reduction in decay would accrue to older age groups provided the members of those groups had drunk the fluoridated water from birth. Appellants' evidence substantially supported the conclusions: that there is phenomenal agreement among professional and scientific groups in the United States and in the world that fluoridation of public water supplies in the amount provided by the ordinance in question is of great significance in terms of general health, in producing a dental caries resistant enamel on teeth; that "Dental decay is recognized as man's most wide-spread chronic disease. Few persons escape. No social stratum or age group is immune. A decayed tooth never heals by itself, by prescription or by advice. About 97,000,000 people in the United States have decayed teeth requiring treatment"; that fluoridation of water is safe, practicable, not unduly expensive as a health measure, and is efficacious. Appellants' evidence tended to show further that the harmful effects suggested by plain-

tiffs' evidence would not occur and the testimony of one of appellants' witnesses was that he practiced dentistry in Kirkwood (a municipality in St. Louis County) where the water supply had been fluoridated since January 1, 1958, and that he had observed no harmful effects; that dental fluorosis or mottling of the enamel on teeth occurs to an appreciable extent only when there is an excessive amount of fluoride in the water, that is, in excess of two parts fluoride per million gallons of water.

The evidence also established that fluoridation of public water supplies to the extent provided in the ordinance had been endorsed by the St. Louis Dental Association, the Missouri State Dental Association, the American Dental Association, the American College of Dentists, the Missouri Public Health Association, the American Public Health Association, the Missouri State Department of Health, the United States Department of Health, Education and Welfare, the St. Louis Medical Society, the Missouri State Medical Association, the American Medical Association, and the St. Louis County Health Department; that there are twenty-five communities in Missouri now fluoriding their water supplies to approximately one part per million; that at trial time there were 1,134,000 people in Missouri drinking artificially fluoridated water to the extent of one part per million gallons, and there were 109,000 people drinking naturally fluoridated water in various amounts; for example, in Columbia, Missouri, the natural fluoride content is 1.32 parts fluoride per million gallons of water; that Army, Navy, and Air Force installations where children are in residence furnish fluoridated water.

Appellants' evidence tended to show further that water fluoridated as the ordinance required is nonpoisonous; that toxicity will occur only at concentrations 20 to 50 times as great as that proposed by the ordinance; that while applying fluorine directly to the teeth is satisfactory for each individual who receives the treatment, it is not a practical method because there are not enough dentists to effectively accomplish the task; that dental decay occurs at a rate six per cent faster than available dentists can repair it; that fluoridation in the manner proposed is not mass medication but is, in effect, prevention rather than treatment; that chlorine is added to water to cut down bacterial contamination in order to reduce the occurrence of infectious disease, such as typhoid fever, and fluoride is added to prevent or deter the progress of a widespread dental disorder and thereby preserve the dental health of the people who consume the fluoridated water.

It is apparent from the foregoing résumé of the evidence that the question whether over-all harm or over-all benefit will result to individuals who consume water containing the fluoride ion in a concentration of one part fluoride to one million gallons of water is highly controversial and that there is substantial evidence to support a conclusion either way. Our province, in the first instance, is to determine whether the ordinance in question bears a reasonable relation to public health and is thereby fairly referable to the county's police power. It appears to us that decisive of that determination is the fact that the record contains substantial evidence from which the county council reasonably could have found and concluded that dental decay is a widespread and serious disease affecting the dental health of all the people of St. Louis County; that a requirement that the fluoride content of water consumed by St. Louis County residents be supplemented up to one part per million gallons would effectively and extensively decrease tooth decay, particularly in children, but with benefit to all; and that such a method would constitute a safe, practicable, relatively inexpensive, and efficacious public health measure.

We have no doubt, therefore, that the ordinance does bear a reasonable relation to public health and that its provisions are designed to and reasonably will tend to enhance the public health and, therefore, that the action of the St. Louis County Council, in enacting the ordinance in question, was

an exercise of the power conferred by Section 192.300, supra.

■ We next consider whether the ordinance unduly invades or infringes rights guaranteed by the state and federal constitutions. Respondents contend that the ordinance is unconstitutional because it prohibits certain county residents from practicing their religious beliefs. That question is not before us for decision for the reasons which follow. There was no averment by plaintiffs in any pleading claiming any such violation, either directly or by inference. There was no averment that they or any of them are members or represent any members of a religious body or those who hold particular beliefs or practice their beliefs in a particular manner. Nor was there any such contention throughout the trial. There was no evidence offered or adduced pertaining to the tenets or practices of any particular religious body or group of people, nor was there evidence that members of any particular religious body resided in St. Louis County. There was no finding of fact or conclusion of law with respect to the contention now made and thus, of course, no part of the judgment was based upon any such finding or conclusion.

After the present appeal was pending in this court, leave was granted an attorney of the Missouri Bar to file a brief herein as amicus curiae, on the averred ground that the case was one which affected the interest and welfare of all the people of Missouri, including those residing in large metropolitan areas. The brief of amicus curiae contends, and that contention is specifically adopted by and included by reference as part of respondents' brief, that the ordinance in question is unconstitutional because it subjects Christian Scientists in St. Louis County to forced medication against their religious beliefs and thereby deprives them of their constitutional right under the First Amendment to the United States Constitution. It is suggested by inference that we may take judicial notice of the fact that it is a religious belief of Christian Scientists

that no material applications for relief of disease should be employed. But if, in the public interest, we should wish to resolve the question posed in amicus' brief, even though the constitutional question was not raised below nor preserved for appellate review, and even if we should take judicial notice that the belief suggested by counsel is a religious belief of Christian Scientists, still we should not know whether, nor could we assume that, it would violate that belief for one to consume water which theretofore had contained one-half part fluoride, simply because another one-half part had been added. Furthermore, if we should assume that the fluoride ion in water constitutes medication as to the individual and if we should further assume that the ingestion of that medication violates a religious belief of any county resident, then it must follow that forced medication now exists and that the enforcement of the ordinance in question would not change the situation in that respect. Be that as it may, however, the fact is that we may not on this record decide whether anyone's religious beliefs or anyone's freedom to practice his religious beliefs would be unduly and unlawfully infringed by the enforcement of the ordinance.

■ Respondents and amicus curiae state their specific contention with respect to the claimed violation of the Fourteenth Amendment to the United States Constitution and of Section 10 of Article I of the Missouri Constitution in this manner: The ordinance is unconstitutional and void because it deprives plaintiffs and other residents of St. Louis County of their liberty in that it denies them freedom of choice in matters relating to bodily care and health by compelling them to drink water containing "the poisonous drug fluoride ion" against their wills when not justified by "pressure of great dangers" to the public health.

Inasmuch as there is before us no question involving the violation of respondents' or others' freedom to believe and practice the tenets of their religious beliefs or in-

volving the violation of any other First Amendment right, it is apparent that in so far as the federal constitution is concerned we are here dealing with the due process clause of the Fourteenth Amendment as applied "for its own sake" and not with the due process clause as an instrument for transmitting any specific prohibition of the First Amendment. That is to say, we are not here dealing with a freedom which has been said to occupy a "preferred place * * * in our scheme," i. e., those "freedoms secured by the First Amendment." West Virginia State Board of Education v. Barnette, 319 U.S. 624, 639, 63 S.Ct. 1178, 87 L.Ed. 1628; Thomas v. Collins, 323 U.S. 516, 529, 530, 65 S.Ct. 315, 322, 89 L.Ed. 430.

Respondents point out that the "word 'liberty' contained in that amendment [Fourteenth] embraces not only the right of a person to be free from physical restraint, but the right to be free in the enjoyment of all his faculties as well." (Bracketed insert ours.) Grosjean v. American Press Co., 297 U.S. 233, 244, 56 S.Ct. 444, 446, 80 L.Ed. 660. They concede that their freedom to choose whether to consume water containing the fluoride ion as a preventative to deter the decay of an individual's teeth is subject to regulation by law but contend that one's constitutionally protected freedom may be lawfully infringed only when such is necessary to insure the equal enjoyment of the same right or freedom by others or "under the pressures of great dangers." They rely upon language contained in the memorandum opinion of the trial chancellor who, in turn, stated those "tests" on the authority of Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643. In that case the court upheld the validity of a state compulsory vaccination law. It is true that the court at one place in its opinion quoted this from another case (197 U.S. 26, 27, 25 S.Ct. 361): "'The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is, then, liberty regulated by law.'" And at another place in the opinion (197 U.S. 29, 25 S.Ct. 362) the court, in pointing out that it was "the duty of the constituted authorities primarily to keep in view the welfare, comfort, and safety of the many, and not permit the interests of the many to be subordinated to the wishes or convenience of the few," pointed out further that to conserve the safety of members of society, "the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." But the court in the Jacobson case in the course of its opinion also said: "If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the legislature has done comes within the rule that, if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution. * * *

"Whatever may be thought of the expediency of this statute, it cannot be affirmed to be, beyond question, in palpable conflict with the Constitution." 197 U.S. 31, 25 S.Ct. 363.

In our view the Jacobson case does not support the proposition that individual freedom of choice pertaining to a matter affecting the public health, such as the freedom of choice here asserted, may be validly restricted or infringed only where the restraint imposed is necessary in order to

insure equal enjoyment of the same freedom by others or under the "pressure of great dangers"; nor does that case stand for the proposition that only when necessary to protect the individual as well as the members of the general public from the danger of a communicable or contagious disease may a legislative body validly enact an ordinance interfering with the freedom of choice of the individual as to a matter affecting the public health.

The United States Supreme Court has made it clear that even in cases involving First Amendment prohibitions which occupy an exalted and preferred position in our scheme of things it will not indiscriminately apply the "clear and present danger" test stated in Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 249, 63 L.Ed. 470. That court adopted the interpretation of that phrase suggested by Chief Judge Learned Hand. In Dennis v. United States, 341 U.S. 494, 510, 71 S.Ct. 857, 868, 95 L. Ed. 1137, the court, speaking of the phrase "clear and present danger," said: "Chief Judge Learned Hand, writing for the majority below, interpreted the phrase as follows: 'In each case [courts] must ask whether the gravity of the "evil," discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger.' [United States v. Dennis, 2 Cir.] 183 F.2d at 212. We adopt this statement of the rule. As articulated by Chief Judge Hand, it is as succinct and inclusive as any other we might devise at this time. It takes into consideration those factors which we deem relevant, and relates their significances. More we cannot expect from words." And see Baer v. City of Bend, 206 Ore. 221, 292 P.2d 134, 139, 140, where the Oregon Supreme Court in a well-reasoned opinion held that the effect of the fluoridation of a public water supply did not infringe the consumer's constitutional guarantee of religious liberty.

It seems to us that the language of the court in West Coast Hotel Company v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, is apropos in determining whether the due process clause of the Fourteenth Amendment has been violated under the facts here. There the court, in dealing with the question whether there had been a deprivation of freedom to contract by the enactment of a minimum wage regulation for women, said at page 391: "What is this freedom? The Constitution does not speak of freedom of contract. It speaks of liberty and prohibits the deprivation of liberty without due process of law.. In prohibiting that deprivation the Constitution does not recognize an absolute and uncontrollable liberty. Liberty in each of its phases has its history and connotation. But the liberty safeguarded is liberty in a social organization which requires the protection of law against the evils which menace the health, safety, morals and welfare of the people. Liberty under the Constitution is thus necessarily subject to the restraints. of due process, *and regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process.*" (Our italics.)

Missouri cases hold that Article I, Section 10 of our Constitution ("That no person shall be deprived of life, liberty or property without due process of law") is. not violated by an ordinance which, as we have held the one in question to be, is fairly referable to the police power of the enacting body and which is shown to have been enacted for the protection and enhancement of the public health and general welfare of the inhabitants of the area in question, unless its provisions are unreasonable and the burden is upon the one asserting the ordinance's invalidity to overcome the legal presumption of validity which attends the ordinance. Passler v. Johnson, Mo., 304 S. W.2d 903, 908[3–7].

Respondents' evidence tended to show that the ingestion of any amount of fluoride ion is harmful, that consuming water which. contains any amount of the fluoride ion constitutes medication, and that there is no difference between the fluoride ion existing in. the Missouri River water as it is now distributed by the Water Company and the in-

organic fluoride ion which would be placed in the water under the ordinance requirement. Thus it is clear that this freedom of choice which respondents assert is not the freedom to choose not to ingest any fluoride (they say, medication) because they are now consuming and apparently, irrespective of the ordinance, will continue to drink water containing one-half part fluoride to each million gallons. Thus, the freedom of which respondents speak can be only the freedom to choose not to ingest more fluoride (more medication) than they are now consuming by drinking water which contains an additional one-half part fluoride to each million gallons of water. It is true that respondents' evidence tended to show that the greater the amount of fluoride in the water the greater the harm to the individual consuming it, so admittedly, from respondents' standpoint, there is involved some "freedom of choice" but it is of the nature indicated.

We are not concerned with the expediency of the ordinance or with the wisdom of the council's action in enacting it. We again recognize that we are bound by the council's reasonable determination that the measure will result in benefit to each individual consumer and not in harm. We have held herein that the ordinance does bear a reasonable relation to public health and, based upon the council's conclusions, does tend to enhance the health of the residents of the county. Consequently, it appears that for us to hold the ordinance in question is in "palpable conflict" with the state or federal constitution we would need to find and rule that, although, as we have held, the ordinance bears a reasonable relation to public health and its enforcement would enhance the public health, nevertheless, the type and extent of the benefit accruing to each individual (prevention of dental decay) are such that each individual must be completely free to determine for himself whether he will accept the asserted benefit bestowed through the fluoridation of the public water supply, else his freedom of choice is unreasonably infringed.

We correctly may not so hold. On the contrary, it seems to us that the reasonably expectable and valuable benefit which the council determined would accrue to the community as a whole justifies the resulting infringement of the individual's freedom of choice. (We note, parenthetically, that we have assumed throughout that the enforcement of the ordinance would "compel" respondents and other residents to consume the fluoride ion. That is because we recognize that there is a very real compulsion for many from a practical standpoint when the only apparent ways to avoid drinking public water and thus to avoid consuming the additional fluoride probably are, for many, prohibitively expensive or unduly burdensome. The fact remains, however, that in considering the matter of undue or unreasonable infringement, it is well to recognize that the ordinance does not specifically require any individual water consumer to do anything.)

We are supported in our conclusion as to the ordinance by the opinions from each of eight appellate courts which have considered the questions involved in the fluoridation of public water supplies. It is true that there are distinguishing features in those cases. In some were fact stipulations which eliminated certain questions. In one of them, the Iowa case, the sole question was the power of a city to enact such an ordinance. On the whole, however, the opinions in the following cases are authority for the conclusion we have reached: Baer v. City of Bend, supra; Kaul v. City of Chehalis, 45 Wash.2d 616, 277 P.2d 352; Kraus v. City of Cleveland, 163 Ohio St. 559, 127 N.E.2d 609; Dowell v. City of Tulsa, Okla., 273 P.2d 859, 43 A.L.R.2d 445; De Aryan v. Butler, Cal.App., 260 P.2d 98; Froncek v. City of Milwaukee, 269 Wis. 276, 69 N.W.2d 242; Chapman v. City of Shreveport, 225 La. 859, 74 So.2d 142; Wilson v. City of Council Bluffs, Iowa, 110 N.W.2d 569.

Taking into account and consideration the relevant facts and circumstances as we see them, we are of the view that we may

not confidently say that the enforcement of the ordinance in question would result in an undue or unreasonable infringement of respondents' protected freedom of choice under the due process clause of either the state or federal constitution.

Respondents contend also that the fact that their evidence indicated that there were other and, in their opinion, better ways to apply the fluoride ion to the teeth obviated the necessity for the fluoridation of the public water supply and thereby caused the ordinance to "broadly stifle fundamental personal liberties when the end can be more narrowly achieved." Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231. While, as we have pointed out heretofore, respondents did adduce evidence that fluorine could be applied to the teeth either topically or by dissolving tablets in individual water supplies, there was other evidence from which the council reasonably could have reached the conclusion that such methods would not effectively accomplish the purpose of the ordinance, that is, to benefit all by partially freeing each from the ravages of dental decay. It is suggested also that the ordinance benefits only a particular class, i. e., children up to 14 years, and it is contended that the ordinance is unconstitutional for that reason. While it is true the ordinance in question must be in the interest of the public generally as distinguished from the interest of a particular class, the evidence was such as justified the council in determining that the consumption of fluoridated water would benefit people of all ages. There was direct testimony to that effect and, of course, it is apparent that children become adults. Clearly, the council was justified in finding that the ordinance was in the interest of the county's entire population and not solely in the interest of a particular class.

Respondents contend further that the ordinance is in conflict with and violates Sections 196.125–196.145 RSMo 1959,

and V.A.M.S. The cited sections define a nonalcoholic drink and then provide that such nonalcoholic drinks shall not be adulterated or misbranded and prescribe a penalty for any violation. Respondents contend that water is a nonalcoholic drink and, inasmuch as Section 196.135, supra, provides that a nonalcoholic drink is adulterated when it contains any fluorides or fluorine compounds, the sections in question would be violated by the enforcement of an ordinance requiring the addition of a fluoride to water. We are of the view that respondents' contention in that respect is untenable. Section 196.125, 12 V.A.M.S., defines a nonalcoholic drink in these words: "the term 'nonalcoholic drink,' as used herein, shall include carbonated beverages of all flavors, sarsaparilla, ginger ale, soda water of all flavors, lemonade, orangeade, root beer, grape juice, and all other nonintoxicating drinks." It is clear enough to us that the legislature did not intend to include water within the expression "all other nonintoxicating drinks." Clearly we think the legislature intended by that language to include other drinks popularly referred to as "soft drinks" which were not specifically named but which were of the general kind and nature as those listed. We so hold. See Dowell v. City of Tulsa, supra, 273 P. 2d 859, 864[11, 12]; Froncek v. Milwaukee, supra, 269 Wis. 276, 69 N.W.2d 243, 250, 251.

We are of the opinion that the ordinance in question is not invalid for any of the reasons urged, and it follows that the judgment is reversed and the case remanded with directions to enter a judgment in accordance with the views herein stated.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.