## Sheffer v. City of Harrisburg

*John D. Rively*, for plaintiff.
*Francis B. Haas, Jr.*, for defendants.

CALDWELL, J., November 10, 1971.—On December 22, 1970, the City Council of the City of Harrisburg enacted an ordinance authorizing and directing the mayor to cause the public water supply of the city to

be fluoridated. The following day, December 23, 1970, plaintiff filed a complaint in equity seeking to enjoin the city and various of the officials of the city from pursuing the direction and authorizations contained in the ordinance. On January 11, 1971, preliminary objections were filed by defendants, consisting of a demurrer, a petition raising the defense of lack of capacity to sue, and, in the alternative, a motion for a more specific pleading. These objections have been argued and are now before us for disposition.

The issue before the court at this time does not involve a decision on the merits of fluoridation. Before this important question can come before us, we must resolve several legal questions that have been advanced concerning plaintiff's complaint and the theories under which she is proceeding.

## THE DEMURRER

Defendants allege that plaintiff has failed to state a cause of action upon which relief can be granted, and, in order to dispose of this objection, it is necessary to analyze the several bases for relief relied upon by plaintiff. The allegations of plaintiff's complaint in certain respects are vague and ambiguous and neither the complaint nor argument brief gives a completely clear indication of the legal or factual theories upon which she is proceeding. However, we believe it can be fairly stated that plaintiff's primary contention is that the fluoridation of a public water supply is prohibited by the following statutes for the reasons set forth:

1. That the fluoridation of public water supplies is prohibited by section 8 of the General Food Law of May 13, 1909, P. L. 520, 31 PS §1, et seq.

2. That the provisions of the Act of July 26, 1913, P. L. 1363, sec. 2, as amended, 43 PS §473, declares

the use of fluorides as dangerous to health, thus rendering fluoridation illegal.

3. That the provisions of the Act of June 24, 1939, P.L. 872, 18 PS §4639, dealing with poisons, require that the fluoridation of water be declared illegal and improper.

Although it is not included in the complaint, plaintiff's brief also refers to the Non-Alcoholic Beverage Law of July 5, 1957, P. L. 485, as amended, 31 PS §790.1, which deals with the manufacture, bottling and sale of nonalcoholic beverages. This act provides that a nonalcoholic drink shall be deemed adulterated if it contains any ". . . hydrofluoric acid or fluorides, fluoborates, fluosilicates or other fluorine compounds . . .": 31 PS §790.5.

The applicable provisions of the General Food Law provide as follows:

". . . an article of food shall be deemed to be adulterated,

". . .

"Fifth. If it contains any added . . . hydrofluoric acid or fluorides, fluoborates, fluosilicates, or other fluorine compounds . . .": 31 PS §3.

It is plaintiff's contention that the fluoridation of a public water supply is prohibited by the provisions quoted above from the General Food Law and the Non-Alcoholic Beverage Law, although no authority or argument is submitted to support these conclusions. Defendants urge that neither of these acts apply to the fluoridation of a public water supply, and it would appear that a logical argument can be made for this position. The General Food Law, which was enacted long before the fluoridation issue arose, is concerned with the manufacture or sale of adulterated "food" and it has been held that the act does not apply to "drinks" prepared by one who bottles carbonated or still bev-

erages. See Cott Beverage Corporation v. Horst, 380 Pa. 113, 110 A.2d 405 (1955). In Commonwealth v. Kebort, 212 Pa. 289, 61 Atl. 895 (1905), the court, in discussing an earlier food law, noted that food and drink have definite legal meanings:

"The words food and drink in common usage and understanding are complementary and associate terms, denoting the two prime necessities of life, but they are so far from synonymous that they import a plain and fundamental distinction, as universal as language and as old as the human race. No tongue is so primitive that it lacks different words to indicate them and different words to express the sensations of want of them, as hunger and thirst": Page 291.

In Commonwealth v. Mengel, 21 D. & C. 2d 335 (1959), the court decided that cider is a beverage or drink and is not an article of "food," and that cider is not within the ambit of the General Food Law. If the General Food Law is not applicable to beverages or drinks, we fail to see how it could be extended to apply to water.

Insofar as the Non-Alcoholic Beverage Act is concerned, we note that the section relied upon by plaintiff includes the provision that, "Nothing herein prohibits the use of treated potable water as furnished by any approved public water supply": 31 PS §790.5. Although there have been no interpretations of either act within the framework of the fluoridation issue, it should be observed that both statutes appear to deal with those engaged in the business of preparing and selling food and beverages to the general public. It can be argued that these laws apply to the fluoridation of water because fluoridated water from a public water supply will be consumed or used by those engaged in the food and beverage business. However, we believe that such reasoning is too remote to the apparent

purposes of the two statutes, which is to regulate certain businesses. Without some clearer indication of the legislative intent, we do not agree that the application of these acts can be broadened to the extent desired by plaintiff.

It is readily apparent that the real purpose of the statutes under consideration is to regulate and control persons and firms who are directly engaged in the commercial manufacturing and sale of food and non-alcoholic beverages to the general public. There is no indication in either act, or in the cases decided under them, that any different result was intended. It has already been noted that the beverage law specifically excludes the treatment of public water and our courts have decided that the food law does not apply to drinks, which certainly includes water. We conclude that the General Food Law and the Non-Alcoholic Beverage Law[1] have no application concerning the treatment of public water supplies, including fluoridation, and we sustain defendants' demurrer to plaintiff's action based on said laws.

Similarly, we see no applicability of the other statutory provisions relied upon by plaintiff. The Act of July 26, 1913, P. L. 1363, sec. 2, 43 PS §473, is known as the Pennsylvania Lead Manufacturers' Act. The obvious purpose of this legislation is to safeguard the health of employes engaged directly in the manufacture of certain substances, including fluosilicate. However, the act has no application whatsoever to the subject under consideration and plaintiff has not demonstrated how the fluoridation of water could possibly be affected by the terms of this statute.

---

[1] In Readey v. St. Louis County Water Co., 352 S. W. 2d 622 (1961), it was held that fluoridation did not violate the Missouri Non-Alcoholic Beverage Law.

The remaining statutory provision cited by plaintiff, the Act of June 24, 1939, P. L. 872, 18 PS §4639, is from The Penal Code. This act makes it a crime to sell certain poisons, including any "corrosive sublimate," except on the prescription of a physician. The act also controls the labeling of containers and the identification and registering of purchasers of poisons. Assuming that fluorine is a corrosive sublimate, it is nevertheless our opinion that this act has no applicability to the fluoridation of public water and in accordance with our previous discussion must be restricted in its application to the conduct prohibited by its terms and none other. In this connection, we note that arguments that fluoridation violates statutory prohibitions against the unlicensed practice of medicine or the unlawful sale of poisons were rejected in Dowell v. City of Tulsa, 273 P.2d 859 (1954), and Wilson v. City of Council Bluffs, 253 Iowa 162, 110 N. W. 2d 569 (1961), respectively.

The Food and Beverage Laws and the other statutes relied on by plaintiff are penal in nature and in accordance with section 58 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558, and numerous cases decided thereunder, must be strictly construed. See Commonwealth v. Glover, 397 Pa. 543, 156 A.2d 114 (1959). The object of all interpretation and construction of laws is to ascertain and effectuate the legislative intent and a strict construction of the two statutes fails to support the plaintiff's position. See Commonwealth v. Peoples, 345 Pa. 576, 28 A.2d 792 (1942). Plaintiff's contentions concerning the applicability of the foregoing statutes require a strained and distorted interpretation of the language of these laws which we are unwilling to adopt, and we have been unable to find any case law that supports plaintiff's application of these laws. In Genkinger v. Water Co., 14 Lawrence 101 (1955), the court passed upon the

merits of fluoridation but, unfortunately, the issue of the applicability of these acts was not raised. So far as we can ascertain, this is the only case in Pennsylvania dealing with the legality of fluoridation.

We sustain defendant's demurrer and rule that none of the statutory authority relied upon by plaintiff prohibits or controls fluoridation of the public water supply of the City of Harrisburg.

## PLAINTIFF 'S CAPACITY TO SUE

We have studied defendants' contention that plaintiff lacks capacity to sue and has no standing to enforce the provisions of the General Food Law and the Non-Alcoholic Beverage Law because those acts provide that they shall be enforced by the Secretary of Agriculture: 31 PS §8 and 31 PS §790.12. While the disposition of this question may not be required because of our action on defendants' demurrer, we nevertheless believe a comment on said objection is indicated. We do not agree with defendants that the enforcement of these laws is limited to litigation brought by the Secretary of Agriculture, although we recognize that most cases will be prosecuted in this form. As between the various agencies of State government, these acts clearly place the *duty* on the Secretary of Agriculture to enforce them. But does it follow that no other citizen can seek the protection afforded by these laws? We have found no decision which so holds.

Defendants attempt to compare this case to one where a mandamus action is brought against a public official to procure the enforcement of a duty owed by that official. In such situations, the Act of June 8, 1893, P. L. 345, sec. 4, 12 PS §1914, requires that "the proceedings shall be prosecuted in the name of the commonwealth on the relation of the attorney general." This act has been interpreted as limiting such actions

to suits by the Attorney General. See Dorris v. Lloyd, 375 Pa. 474, 100 A. 2d 924 (1953). We fail to see that the situations are comparable, however, because the General Food Law only provides that the Department of Agriculture "shall be charged with the enforcement of " the act and the Beverage Law states that the Secretary of Agriculture "shall have the power and it shall be his duty" to enforce the act. Neither act contains the restriction that its provisions may not be raised in an appropriate case by a private citizen. Plaintiff here seeks to enjoin an act which she argues is prohibited by these laws and we see no incapacity in this regard.

The food and beverage laws were enacted to protect the public health and welfare and, in absence of a definitive holding by our courts, we believe that a citizen may allege violations of these laws in litigation of this nature. Were the food and beverage laws applicable to this case, we would hold that any affected citizen would have standing to contend that fluoridation of water is prohibited by them. In this case, however, the matter of plaintiff's standing to sue is moot, for we have already decided that the food and beverage laws are not applicable to the fluoridation of a public water supply.

## MOTION FOR MORE SPECIFIC COMPLAINT

We come now to defendants' motion for a more specific complaint. In addition to the statutory provisions relied on by plaintiff, the complaint contains broad averments or inferences to the effect that fluorine is "a very dangerous chemical substance"; that "the hazards are great"; that "the adoption of said (fluoridation) ordinance . . . is reckless and without due regard and consideration for the health and

welfare of the resident consumers of the City"; that the "consumers . . . will sustain irreparable injury, if fluorine is inducted in the city water supply"; that certain text writers consider fluorine a dangerous chemical; that fluoridation is "needless, wasteful, illegal, injurious to health," etc.

We consider these statements as being expressions of opinion or conclusions and not averments of fact, and we note that the complaint fails to allege any facts in support of these generalizations.

If plaintiff seeks relief independently of the statutory authority referred to in the complaint, it is incumbent upon her to plead the facts upon which she relies concisely and with particularity in accordance with the Pennsylvania Rules of Civil Procedure. It is insufficient to simply allege that fluoride is a dangerous or harmful chemical, that fluoridation is dangerous to the consumer or that certain textbooks consider it so. Plaintiff must set forth the facts upon which such conclusions are based. As stated in 3 Standard Pa. Pract. §31, 135, "every party is entitled to be informed of the facts he will meet so that he may properly prepare his case." See also Bakery & Confectionery Workers v. Local 464, 84 Dauph. 301 (1966). The complaint does not comply with the requirements of the rules and plaintiff will be permitted to file an amended complaint if this matter is to be pursued.

## ORDER

And now, November 10, 1971, defendants' demurrer is sustained in accordance with this opinion and defendants' motion for a more specific pleading is granted. Plaintiff is afforded 30 days in which to file an amended complaint.